UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER WILSON,

                Petitioner,                        Case No. 12-cv-11389

v.                                             Honorable Thomas L. Ludington

THOMAS M. BIRKETT,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

      Petitioner, Christopher Wilson, confined at the Michigan Reformatory in Ionia, Michigan, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in the Livingston County Circuit Court to one count of armed robbery, Mich. Comp. Laws § 750.529, and one count of attempted unarmed robbery, § 750.530. Petitioner was sentenced to concurrent sentences of fourteen to twenty-five years as a fourth habitual offender. Petitioner alleges that he was deprived of effective assistance of counsel at the time of the plea; that his plea was not knowing, intelligent, or voluntary; that trial counsel negotiated a plea agreement that did not satisfy the "armed" element for armed robbery; that he was denied effective assistance of counsel at the time of sentencing where counsel failed to properly address the "armed" robbery element and presented incomplete and inaccurate information to the sentencing judge; and that his sentence was unconstitutional because it was based upon inaccurate and incomplete information. Respondent has filed an answer to the petition asserting that the claims are meritless and/or unexhausted. Petitioner filed a reply brief indicating that he wishes to delete

his unexhausted claims. Petitioner's request to delete his unexhausted claims will be granted. Petitioner's exhausted claims will be denied on the merits.

## I.

Petitioner's conviction arises from a robbery at a bar. At the preliminary exam, Rose Field testified about—and demonstrated—that Petitioner had his left hand in his pocket pointing what she thought was a gun at her. January 1, 2008 Transcript, pp. 16-18. Another witness, John Paul Albertson, testified that just before he hit the floor, he saw Petitioner's hand move in the direction of his belt buckle, stating that "there's only one reason why [Albertson] could think of it [moving in that direction] and [it is because] you have a weapon, you have a gun." *Id.* at 49.

Petitioner was charged with one count of unarmed robbery and one count of attempted unarmed robbery, January 1, 2008 Felony Information at 1, which the prosecutor later amended to one count of armed robbery and one count of attempted armed robbery. January 14, 2008 Am. Felony Compl. at 1. After Petitioner was bound over for trial on the two amended counts, January 16, 2008 Transcript, pp. 63-64, the prosecutor then again amended the charges to one count of armed robbery and one count of attempted unarmed robbery. March 17, 2008 Transcript, pp. 4-5. Petitioner faced two sentences of life in prison as a fourth habitual offender for the attempted unarmed robbery and armed robbery charges. *Id.* at 6.

On March 17, 2008, Petitioner entered a guilty plea to attempted unarmed robbery and armed robbery pursuant to a *Cobbs* agreement[1] which placed a 14-year ceiling on Petitioner's minimum prison term. *Id*. at 6-15. Petitioner was then sentenced on May 5, 2008, as a fourth habitual offender, to concurrent terms of 14 to 25 years in prison. May 5, 2008 Transcript, p. 11.

---

[1] *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), permits a defendant to enter a guilty plea in reliance on the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the sentence actually imposed exceeds the preliminary evaluation.

Following his conviction, Petitioner filed a motion seeking a *Ginther* hearing, which was held on April 23, 2010.[2] After hearing testimony, the trial court denied Petitioner's claims of ineffective assistance of counsel; determined that Petitioner's plea was freely, voluntarily, and understandingly made, April 23, 2010 Transcript, pp. 115-19; and then entered an order denying Petitioner's motions for resentencing and to withdraw his plea. Livingston Cir. Ct. April 23, 2010 Order.

Petitioner's conviction was affirmed on appeal. *People v. Wilson*, No. 298113 (Mich. Ct. App. Oct. 4, 2010); *lv. den.* 795 N.W.2d 130 (Mich. 2011) (unpublished table decision). Petitioner now seeks habeas relief on the following grounds:

> I. Petitioner was deprived of the effective assistance of counsel at the time of the plea, and Petitioner's plea was neither knowing, intelligent, nor voluntary, where defense counsel negotiated a plea and sentence agreement to an armed robbery offense where substantial evidence was available to defense counsel that Petitioner's conduct at the time of the offense did not satisfy the "armed" element for armed robbery, and where Petitioner had informed counsel prior to the plea that he had not been armed, and had not pretended to be armed, at the time of the offense.
>
> II. Petitioner was deprived of the effective assistance of counsel at the time of sentence where counsel litigated Petitioner's sentence based upon an erroneous presumption that Petitioner's conduct at the time of the offense did not satisfy the "armed" element for armed robbery, and where defense counsel presented incomplete and inaccurate information to the sentence judge.
>
> III. Petitioner's sentence was unconstitutional because it was based upon inaccurate and incomplete information.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]"

---

[2] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (Mich. 1973).

the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F. 3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotation marks omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996)(stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

- 4 -

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Supreme Court has explained

> . . . that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761,

- 5 -

766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.

### A.

In his first claim, Petitioner contends that trial counsel was ineffective at the time of the plea by negotiating a plea and sentence agreement to armed robbery where the evidence did not satisfy the "armed" element for armed robbery, rendering Petitioner's plea not knowing, intelligent, or voluntary.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner's first claim alleges that counsel was ineffective for advising him to enter into a plea and sentence agreement to an offense which required a showing that he was armed, when at the time of the offense, he was not armed, and for failing to advise him that he could go to trial and get an instruction on a lesser included offense of unarmed robbery.

The Supreme Court addressed the importance of stability in the guilty plea system at length in *Premo v. Moore*, 131 S.Ct. 733 (2011). There, the Court noted that:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo*, 131 S.Ct. at 741.

The Supreme Court further admonished:

> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture[.]" Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id*. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty or *nolo contendere* plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty or *nolo contendere*, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty or *nolo contendere*, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty or *nolo contendere* if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type

of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005). Petitioner was facing up to life in prison as a fourth habitual offender on the armed robbery and the attempted unarmed robbery charges. Trial counsel was able to negotiate a plea and sentence agreement with the prosecutor that permitted Petitioner to plead guilty to armed robbery and attempted unarmed robbery with a sentence of 14 to 25 years imprisonment, as a fourth habitual offender.

The evidence of Petitioner's guilt to the robbery and attempted robbery charges was substantial. Two witnesses testified that they believed that Petitioner had a gun. One saw the Petitioner's hand move to the area of his belt buckle, leading the witness to comment that "there's only one reason why I could think of it and [it is that] you have a weapon, you have a gun." The other saw Petitioner had his left hand in his left jacket pocket, pointing his pocket at her as though he had a gun. January 16, 2008 Transcript, pp. 16-18, 23, 33-34, & 49. As he pointed his pocket at her, Petitioner told this witness that he was going to rob the place, *id.* at 18-19, and that he was going to kill her, *id.* at 21.

Trial counsel testified at the *Ginther* hearing that Petitioner should not take the stand for numerous reasons: the witness Rose Field could identify the petitioner's tattoos; counsel did not want the jury to hear what Petitioner had told him about his participation in the offense; Petitioner had a number of impeachable offenses, including a number of uttering and publishing

convictions, which could be used against him if he chose to testify; and Petitioner had consumed about 15 beers, 6 to 7 shots of Jagermeister, and 4 to 5 Vicodin tables—all within a 5 to 6 hour period, as well as used 5 marijuana cigarettes during the day. April 23, 2010 Tr., pp. 45-46.

Under Michigan law, a conviction for the offense of armed robbery "requires a finding that the defendant was armed either with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it was a dangerous weapon at the time of the robbery." *People v. Jolly*, 442 Mich. 458, 465; 502 N.W. 2d 177 (1993). "The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article." *Id*. at 469–470. In this case, the evidence if believed, established an armed robbery.

Counsel was effective in negotiating the plea for the following reasons:

1. Counsel determined that the witness, Rose Field, would be credible after hearing her testimony at the preliminary exam. April 23, 2010 Tr., pp. 38-40, 54-55, 115-19.

2. Other witnesses that did not see the petitioner's hand in his pocket were on the ground and had their eyes closed or were not within the line of view to see the robbery. *Id.* at 46-47, 62-63.

3. The petitioner had prior convictions and could be impeached if he testified. *Id*. at 46)

4. Counsel negotiated a below the guidelines sentence for the petitioner. Counsel further indicated that had the petitioner gone to trial, his minimum sentencing guidelines would have been over 33 years. *Id*. at 50, 53, 61-62, & 115-19.

Under the circumstances, counsel's advice to plead guilty was reasonable.

Petitioner also claims that counsel should have presented a mental illness defense, while acknowledging that an insanity defense would not be applicable. There was no evidence to show that Petitioner was legally insane. April 23, 2010 Tr., pp. 51-52. Petitioner also admitted that he did not request a defense of legal insanity. *Id*. at 97-98. Petitioner contends that counsel was ineffective for failing to pursue a diminished capacity defense or intoxication defense.

Federal courts have rejected ineffective assistance of counsel claims for failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful. *Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984); *Wilen v. Wainwright*, 793 F.2d 1190, 1194 (11th Cir. 1986); *see also Vinson v. McLemore*, 226 F. App'x 582, 585 (6th Cir. 2007) (trial counsel's alleged conduct in relying on self-defense as defendant's only theory of acquittal, rather than investigating and pursuing voluntary intoxication defense, was reasonable trial strategy, and therefore was not ineffective assistance of counsel; trial counsel explained at evidentiary hearing he never used alcohol as a defense and had never known of it being successful and that jurors ordinarily did not like the argument that a defendant was too drunk to know what he was doing). Petitioner has failed to show a reasonable probability that he would have received a lesser sentence had he presented an intoxication defense at trial than he did by pleading guilty to the armed robbery and attempted unarmed robbery charges. *See Shanks*, 387 F. Supp. 2d at 750.

Secondly, since diminished capacity is no longer a defense in Michigan, counsel was not ineffective by not presenting this defense. In 1994, the Michigan legislature enacted M.C.L. § 768.21a, which set forth the legal standards for an insanity defense in Michigan. The Michigan Supreme Court has subsequently held that this statute abolished the diminished capacity defense in Michigan, and that the insanity defense, as established by the Michigan Legislature in

- 11 -

§ 768.21a, was the sole standard for determining criminal responsibility as it relates to mental illness or retardation. *See People v. Carpenter*, 464 Mich. 223, 241; 627 N.W. 2d 276 (Mich. 2001); *see also Wallace v. Smith*, 58 F. App'x 89, 94, n.6. (6th Cir. 2003). Because Michigan no longer recognizes a diminished capacity defense, the petitioner is unable to show that counsel was ineffective in failing to pursue such a defense on the petitioner's behalf. *See e.g. Nields v. Bradshaw*, 482 F.3d 442, 456 (6th Cir. 2007); *see also Hart v. Davis*, No. 2007 WL 2049511, *4 (E.D. Mich. July 12, 2007)

Furthermore, while trial counsel did consider a possible defense of diminished capacity, counsel did not believe that the facts would support it. Trial counsel found no evidence that Petitioner's capacity was diminished at the time he committed the offense. April 23, 2010 Tr., pp. 59-60.

As a related claim, Petitioner says trial counsel was ineffective for not presenting evidence of his mental health as a mitigating factor at sentencing. Petitioner's counsel testified at the evidentiary hearing that he used the petitioner's mental health issues to negotiate a below the guidelines sentence on the armed robbery charge, namely the fourteen year ceiling on the minimum sentence. April 23, 2010 Tr., pp. 50, 53, 61-62. Petitioner was ultimately sentenced to 14-25 years in prison. In the context of presenting mitigating evidence at sentencing, there is an insufficient showing of prejudice, so as to establish an ineffective assistance of counsel claim, where "one is left with pure speculation on whether the outcome of the trial or the penalty phase could have been any different." *Slaughter v. Parker*, 450 F.3d 224, 234 (6th Cir. 2006) (quoting *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004)). Petitioner has offered no evidence, other than speculation, that the judge would have been inclined to go even further below the sentencing guidelines at sentencing had he been presented with evidence of Petitioner's mental health

- 12 -

history, accordingly, the petitioner has failed to show that he was prejudiced by counsel's failure to present mitigating evidence at sentencing.

Petitioner further claims that he was coerced into pleading guilty by his counsel.

Petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. *See Adams v. Burt,* 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea lies within the discretion of the state trial court. *See Hoffman v. Jones,* 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

Generally, the only question on collateral review of a guilty plea is whether the plea was counseled and voluntary. *United States v. Broce*, 488 U.S. 563, 569 (1989). Therefore, the specific question for this Court is whether petitioner's guilty plea was voluntary and intelligent. *Hoffman,* 159 F. Supp. 2d at 655. "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States,* 397 U.S. 742, 748 (1970)). A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645, n.13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The

- 13 -

factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid. *Myers v. Straub,* 159 F. Supp. 2d 621, 626 (E.D. Mich. 2001).

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.*

The record in this case establishes that Petitioner knowingly and voluntarily pled guilty to the charges. Petitioner was advised of the maximum penalties of the crimes that he was pleading to, as well as the rights that he would be giving up by pleading guilty. The terms of the plea agreement were placed on the record. Petitioner acknowledged several times that he was pleading guilty freely and voluntarily and that no threats or coercion had been made to get him to plead guilty. March 17, 2008 Tr., pp. 6-10.

Petitioner's claim that his counsel coerced him into pleading guilty is defeated by the fact that Petitioner stated on the record at the plea hearing that no threats had been made to get him to plead guilty and that he was pleading freely and voluntarily. Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to Petitioner's statements during the plea colloquy, in which he denied that any threats had been

used to get him to enter his plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750-51. Moreover, the Sixth Circuit has noted that "[w]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *United States v. Spencer,* 836 F.2d 236, 239 (6th Cir. 1987). Because Petitioner allegedly felt this coercion at the time that he entered his plea but stated on the record that his plea was free and voluntary, his unexplained delay in bringing this alleged coercion to the attention of the trial court until months later and after he had been sentenced undermines the credibility of his claim that he was coerced into pleading guilty. *See United States v. Ford,* 15 F. App'x 303, 309 (6th Cir. 2001). The petitioner's first claim is without merit.

### B.

Respondent alleges that the petitioner has failed to exhaust claims II and III in the state courts. Petitioner has moved for this Court to delete these unexhausted claims to permit him to proceed with his exhausted claims.

A district court must allow a habeas petitioner to delete the unexhausted claims from his or her petition, especially in circumstances in which dismissal of the entire petition without prejudice would "unreasonably impair the petitioner's right to obtain federal relief." *Rhines v. Weber,* 544 U.S. 269, 278 (2005). Accordingly, in *lieu* of dismissing the petition, the Court will permit the petitioner to delete claims II and III from his petition.

### IV.

Before the petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* FED. R. APP. P. 24(a).

## V.

Accordingly, it is **ORDERED** that Petitioner Wilson's petition for writ of habeas corpus, ECF Nos. 1 & 4, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: February 25, 2015                                   s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

- 16 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 25, 2015.

s/Tracy A. Jacobs
TRACY A. JACOBS